**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ———————————————————— : | |
| RBC BANK (USA), a North Carolina banking : | |
| corporation f/k/a RBC Centra Bank, : | |
| : | Civil Action No. 09-cv-00431 (FLW) |
| Plaintiff, : | |
| : | |
| v. : | |
| : | **OPINION** |
| RILEY, RIPER, HOLLIN & COLAGRECO, : | |
| a Pennsylvania professional corporation and law : | |
| firm with offices in New Jersey, and : | |
| EDWARD J. HOLLIN, ESQ., : | |
| : | |
| Defendants. : | |
| ————————————————————: | |

**WOLFSON, United States District Judge:**

Presently before the Court are two motions filed by Defendants Riley, Riper, Hollin & Colagreco ("RRHC") and Edward J. Hollin, Esq. ("Hollin") (collectively "Defendants"): (1) a motion to transfer venue pursuant 28 U.S.C. § 1404(a); and (2) a motion to dismiss for lack of standing and failure to state a claim. Plaintiff RBC Bank ("RBC" or "Plaintiff") asserts claims of legal malpractice and breach of contract against Defendants. These claims arise out of a contract between RBC and RRHC, in which RBC retained RRHC to serve as its counsel in connection with a financing transaction between RBC and Elliot Residential, LLC ("Elliot Residential"), and Plaintiff claims Defendants committed legal malpractice. For the reasons that follow, the Court denies Defendants' motions.

I.      **Statement of Facts and Procedural History**

Because Defendants move pursuant to Fed. R. Civ. P. 12(b)(6), the following version of

events assumes Plaintiff's allegations are true.   Plaintiff RBC is a North Carolina banking corporation.   Compl. ¶ 1.   Defendant RRHC is a professional corporation and law firm with its principal place of business in Paoli, Pennsylvania and with an office in Lambertville, New Jersey.[1] Id. ¶ 2.   Defendant Hollin is an attorney and vice-president of RRHC, licensed and engaged in practicing law in Pennsylvania and New Jersey.   Id. ¶¶ 3-4.   Elliott Residential is a residential real estate developer and currently the title holder of Sea Pine Estates, a residential subdivision in the Township of Egg Harbor, New Jersey.   Id. ¶ 5.

On January 30, 2007, Plaintiff retained Defendants to serve as Plaintiff's attorneys in a financing transaction between Plaintiff and Elliot Residential, wherein Plaintiff would provide Elliot Residential with a revolving residential construction loan with a maximum sum of twenty million dollars.   Id. ¶¶ 7-8.   According to the agreement, Defendants' responsibilities to Plaintiff included: "(a) drafting the loan documents; (b) procuring for RBC a first lien on the lots, free and clear of all other encumbrances; (c) obtaining title insurance from a reputable title insurance company insuring RBC's first position liens; (d) properly examining and reviewing title records, title and lien searches, and the title report, and discovering the existence of any encumbrances; and (e) taking whatever steps that were necessary as counsel for RBC to protect RBC's interests."   Id. ¶ 9.   In accordance with that retention, Defendants prepared, and Elliot Residential executed in favor of RBC, a Promissory Note dated March 14, 2007, Revolving Guidance Facility Agreement, Mortgage and Security Agreement, and an Assignment of Rents, Leases and Contracts.   Id. ¶ 10.

---

[1]In its Reply Brief in Support of Motion to Transfer ("Transfer Reply"), Defendants state that RRHC no longer maintains an office in New Jersey.   Transfer Reply at 4.   However, there is no indication that Hollin and other RRHC attorneys are no longer members of the New Jersey Bar, or that they did not maintain the Lambertville office at the time they were retained to perform legal services for RBC.

Subsequently, Elliot Residential voluntarily filed bankruptcy on June 10, 2007 ("Bankruptcy Case") in the Bankruptcy Court in New Jersey, and continues to manage its business as a debtor-in-possession. Id. ¶¶ 11-12. In the Bankruptcy Case, Elliot Residential filed an adversary proceeding against Plaintiff and individuals who had contracted to purchase units at Sea Pines Estates ("Contract Purchasers"), alleging that the Contract Purchasers' liens were superior to Plaintiff's lien. Id. ¶¶ 14-16. In that proceeding, Plaintiff argued that its lien had first priority and that it held valid security interests against "virtually all of the Elliott Residential's assets." Id. ¶ 17. Plaintiff filed a third party complaint in Bankruptcy Court against Defendants, alleging Defendants would be liable to Plaintiff if the Bankruptcy Court found the Contract Purchasers' liens to be first in priority. Id. ¶ 18. The Bankruptcy Court granted Defendants' motion to dismiss the third-party complaint for lack of subject matter jurisdiction. Id. ¶¶ 19, 21.

Subsequently, Elliott Residential entered into a settlement agreement with the Contract Purchasers, which was approved by the Bankruptcy Court. Id. ¶ 22. The approval of the settlement resulted in the Contract Purchasers' liens being designated first liens. Pl.'s Br. In Opp'n to Mot. To Dismiss ("Dismiss Opp'n") at 5. RBC and Elliot Residential agreed to set the amount of the vendee lien at $750,000, with a 25% carve-out to be assigned to Elliot Residential for payment of the administrative expenses of the Bankruptcy. If (or when) the Sea Pine Estates project is sold, the net proceeds of the sale will be used first to repay the priority lien claim ($750,000) to satisfy the vendee liens; and any remaining proceeds will be used to apply against RBC's lien. This declaration of Plaintiff's lien being subordinate to those of the Contract Purchasers resulted in the suit before this Court. Plaintiff originally filed suit in the Superior Court of New Jersey, Law Division, Hunterdon County. Def.'s Br. in Supp. Of Mot. to Transfer Venue at 5 ("Transfer Br."). The suit was removed

to this Court by Defendants pursuant to 28 U.S.C. § 1441(a).

In its Complaint, dated December 30, 2008, Plaintiff alleges that Defendants committed legal malpractice and breached their contract with Plaintiff.  Compl. ¶ 6-8.  On February 9, 2009, Defendants filed a motion to dismiss pursuant to Article III, Section 2 of the United States Constitution asserting that Plaintiff's claims do not satisfy the case or controversy requirement and therefore this Court does not have judicial authority to hear the claims, and also fail to state a claim. On February 23, 2009, Defendants also filed a motion to transfer venue to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).

## II.    Motion to Transfer

### A.    Standard of Review

When venue is proper in a particular district, a motion by a party seeking to transfer is governed by 28 U.S.C. § 1404(a).  Section 1404(a) vests a district court with discretion "to adjudicate motions to transfer according to an individualized, case by case consideration of convenience and fairness."  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1998) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).  Specifically, section 1404(a) provides: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought."  28 U.S.C. § 1404(a).

The purpose of section 1404(a) is to protect litigants, witnesses and the public against unnecessary inconvenience and expense.  Van Dusen, 376 U.S. at 616.  When deciding a motion to transfer venue, "courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of the parties, convenience of witnesses, or interests of justice)."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  Instead, courts have considered "all relevant

4

factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." Id.; see also Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337 (D.N.J. 2003). Consequently, the "analysis is flexible and must be made on the unique facts of each case." Calkins v. Dollarland, Inc., 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-50 (1981)). Finally, the burden of establishing the need for transfer rests on the moving party. Jumara, 55 F.3d at 879.

 The first step in a court's analysis of a motion to transfer is to determine whether venue would be proper in the proposed transferee district. Clark, 225 F. Supp. 2d at 337. If so, the court must next establish whether the transfer is in the interest of justice. Id. To make that determination, the court "must consider both the private and public interests effected by the transfer." Id; see also Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1946) (evaluating private and public interest factors effected by transfer). The private interests include: the plaintiff's forum preference; the defendant's forum preference; "whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Jumara, 55 F. 3d at 879 (internal citations omitted). Public factors to be considered include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Id. at 879-80 (internal citations omitted).

### B.    Propriety of Venue in Transferee District

First, the Court must consider whether this action could have been brought in the Eastern District of Pennsylvania. Section 1391(a) of Title 28 of the United States Code provides that a civil action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State." Because Defendant Hollin resides in Pennsylvania and RRHC's principal place of business is in Pennsylvania, the suit could have been brought in the Eastern District of Pennsylvania. Therefore, the Court must look to the private and public interests to determine if transfer would be in the interest of justice.

### C.    Private Interests

Defendants argue that Plaintiff's choice of forum should be given "little, if any deference" because Plaintiff chose to litigate in a forum which is not its home state.   However, a plaintiff's choice of forum is a "paramount consideration" and should not be "lightly disturbed."  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  In that regard, although Defendant is correct that Plaintiff's choice is not entitled "enhanced deference" because New Jersey is not its home state, the choice is still entitled to deference.  Am. Tel. & Tel. Co. v. MCI Commc'n Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990).

Defendant argues that the claim arose in Pennsylvania because the transaction at issue is a Pennsylvania transaction, handled by Pennsylvania attorneys, practicing law from Pennsylvania.[2]

---

[2]Defendants further argue that this claim should be transferred to the Eastern District of Pennsylvania because "all but one of the operative loan documents contained choice of law provisions providing that Pennsylvania law shall govern."  Admittedly, however, these provisions govern the contract between RBC and Elliot Residential.  The contract at issue in this case is between RBC and Defendants and thus, these choice-of-law clauses in the loan documents executed between RBC and Elliot Residential are irrelevant for the purposes of these motions.

Transfer Br. at 12.  However, even though Defendants may have been physically in Pennsylvania during the transaction, Defendants, licensed to practice law in New Jersey, were hired, inter alia, to handle a transaction dealing with New Jersey law and New Jersey real estate.[3]  Compl. ¶ 3, 5, 8-10. Particularly, RBC retained the legal services of the defendants because it required counsel licensed in, and familiar with, New Jersey real estate law with respect to the line of credit RBC had agreed to extend to Elliot Residential.  In that connection, Defendants assumed several responsibilities to RBC relating to the Sea Pines development.  In fact, Hollin prepared the Mortgage and Security Agreement, and Defendants' invoices to RBC specifically include numerous entries dealing with the requirements of New Jersey law.  For example: "Review closing check list regarding NJ specific issues;" "Conference with Phil Rosenzweig re: New Jersey ordinance money mortgage issues;" Review statutory provisions for EJM in drafting or mortgage;" "Conference with [Mr. Rosenzweig] to review NJ mechanics lien law;" "research on obligatory advance issues in New Jersey."  More importantly, the underlying issue is now before the New Jersey Bankruptcy Court. Clearly, the dispute over this matter is local to New Jersey, not Pennsylvania.

Finally, Defendant argues that this case should be transferred because Plaintiff "has not offered any reason as to why litigation in Philadelphia . . . would cause [Plaintiff] any inconvenience."  Defendant fails to recognize, however, that it, as the moving party, has the burden of establishing that transfer is proper; Plaintiff need not show that transfer would be inconvenient. Jumara, 55 F.3d at 879.  Nevertheless, it appears that to show inconvenience, Defendant has

---

[3]Defendants allege that the transaction actually dealt with several properties in several states.  Transfer Br. at 13.  Plaintiff contends that this is an incorrect statement.  Pl.'s Br. in Opp'n to Transfer Br. at 14 ("Transfer Opp'n").  The Court need not address which position is accurate at this time since this dispute involves only the loan from Plaintiff to Elliott Residential for the Sea Pine Estates development in New Jersey.

indicated that the majority of the witnesses and documentary evidence are located in Pennsylvania and none are located in New Jersey.  However, the physical location of the parties is not afforded significant weight in this case due to the relatively short distance, just thirty-three miles, between this Court and the Eastern District of Pennsylvania.  See Marino v. Kent Line Int'l, No. 02-4488, 2002 WL 31618496 (E.D. Pa. Nov. 20, 2002) (finding it "difficult to imagine what great advantage might accrue" by a transfer from the Eastern District of Pennsylvania to the District of New Jersey).  In fact, Defendant has not stated that witnesses or documents would be unavailable, or unnecessarily inconvenient, for litigation in this Court.  Moreover, there is no evidence in the record which would indicate that the financial situation of either party requires transfer.  Accordingly, Defendant has failed to provide the Court with any evidence showing that litigating in this Court would result in unnecessary inconvenience and would not be in the interest of justice.

**D.    Public Interests**

Defendants argue that Pennsylvania has a "compelling local interest of adjudicating this action," whereas New Jersey has no local interest.  Transfer Br. at 17-18.  However, as already discussed, this Court finds that New Jersey does have an interest in this case, particularly since it deals with the alleged legal malpractice of attorneys, who were licensed to practice in New Jersey and performed legal services involving a loan that implicated New Jersey property and lien law.

Similarly, Defendants' argument that jurors in New Jersey should not be burdened with this action is unpersuasive.  New Jersey has a strong interest in this claim and it would not be unduly burdensome on New Jersey jurors to hear this claim.

Finally, Defendants contend that Pennsylvania substantive law applies to this case and therefore, transfer is proper.  The Court disagrees with this position and concludes that New Jersey

8

substantive law, not Pennsylvania, applies to this case.  See Part III.B. infra.  Even assuming that Defendants performed the work for Plaintiffs at their offices in Pennsylvania, Defendants were performing work dealing with New Jersey real estate, acting as attorneys licensed in New Jersey, and their alleged malpractice deals with New Jersey law.  Because Defendants have failed to meet their burden of showing that transfer would be in the best interest of justice and would avoid unnecessary expense and inconvenience, the Court denies Defendants' Motion to Transfer.

## III.    Motion to Dismiss

### A.    Standard of Review

When reviewing a motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 127 S. Ct. at 1968 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  Id. at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts

to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."

Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948-49 (2009).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.  Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1949.

### B.   Choice of Law

As a preliminary matter, the parties dispute which state's substantive law should apply.  A district court must apply the choice of law rules of the forum in which the court sits.  See Klaxon v. Stentor Elec. Mfg., Inc., 313 U.S. 487, 496 (1941); Thabault v. Chaitu, 541 F.3d 512, 535 (3d Cir. 2008).  Because New Jersey is the forum state, its choice of law test – the most significant relationship test – shall apply.  P.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008); Nafar v. Hollywood Tanning Sys., 2009 U.S. App. LEXIS 17561, at *10 (3d Cir. Aug. 5, 2009);  see also Ghaffari v. Hern, No. 06-931 (FLW), 2009 WL 2147092 (D.N.J. Jul. 15, 2009).

The most significant relationship test is a case-by-case, qualitative analysis consisting of two steps.  See Camp Jaycee, 197 N.J. at143.  The first step of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. Id. at 143-44 (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).  Where there is no actual conflict, the analysis ends and the court applies the law of the forum state, New Jersey in this case.

See In re Ford Motor Co., 110 F.3d 954, 965 (3d Cir. 1997); Rowe v. Hoffman-La Roche, Inc., 189

N.J. 615, 621 (2007).  If a conflict does exist, the Court must move onto the second step of the most

significant relationship test, which requires the Court to weigh the factors enumerated in the

Restatement sections corresponding to the Plaintiffs' cause of action.  See Camp Jaycee, 197 N.J at

143-45.

      **1.**      **Step One:  Conflict of Law**

      Defendants assert that no conflict of law exists between New Jersey and Pennsylvania legal

malpractice or breach of contract laws.[4]  Plaintiff, however, contends that a conflict exists between

New Jersey's and Pennsylvania's treatment of damages for both counts of the Complaint.  A conflict

arises where the outcome in one state would differ from that in the other state.  See  In re Mercedes-

Benz Tele Aid Contract Litig., 257 F.R.D. 46 (D.N.J. 2009).  It is clear that the elements required

for legal malpractice and breach of contract claims are substantially similar in New Jersey and

Pennsylvania.[5]  Specifically, however, the parties' main contention in the motion to dismiss is with

_____

[4]In its Motion to Transfer papers, Defendants argue that this case would be more appropriately litigated in Pennsylvania because Pennsylvania substantive law applies.  The Court disagrees.

[5]The elements of a legal malpractice claim in New Jersey are: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff."  McGrogan v. Till, 167 N.J. 414, 425 (2001) (citing Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996)).
A legal malpractice under Pennsylvania law, requires the plaintiffs to show: "(1) employment of the attorney or other basis for a duty owed to the client; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) the attorney's negligence proximately caused damage to the client."  Hughes v. Consol-Pennsylvania Coal Co., 495 F.2d 594 (3d Cir. 1991) (citing Rizzo v. Haines, 520 Pa. 484, 499 (1989)).
A claim for breach of contract in New Jersey requires: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations.  Frederico v. Home Depot, 507 F.3d 188, 203

respect to the damages element.  Taking a contrary position in this motion than its motion to transfer, Defendants claim that the treatment of this injury element is the same under New Jersey and Pennsylvania law.  In that regard, Defendants cite various cases to support their position that in Pennsylvania and New Jersey, a plaintiff must proof actual loss rather than a breach of professional duty causing only nominal damages, speculative or threat of future harm.  In Mariscotti v. Tinari, 485 A.2d 56, 57 (Pa. Super. Ct. 1984), the Pennsylvania state appellate court held that "the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages . . . . Thus, damages are speculative only if the uncertainty concerns the fact of damages rather than the amount." Id. (quotations and citations omitted).  This issue here is not whether the Court can ascertain from the Complaint, at the pleading stage, the amount of damages Plaintiff would suffer as a result of the alleged legal malpractice.  Rather, the issue is whether, as result of Plaintiff's lien becoming secondary to the vendees' lien and the ability to satisfy Plaintiff's lien is not yet known, Plaintiff has pled a cognizable legal injury to satisfy the damages element.  The Court finds that there appears to be no conflict in how New Jersey and Pennsylvania state courts determine when an injury accrues.

With respect to New Jersey, the New Jersey Supreme Court in Grunwald v. Bronkesh, 131 N.J. 483, 496-97 (1993), rejected the proposition that damages were speculative and not legally cognizable until the plaintiff had received an adverse judgment.  Id.  The Court advised that  "[i]t is not necessary that all or even the greater part of the damages have to occur before the cause of

_____

(3d Cir. 2007).

   Under Pennsylvania law, a breach of contract requires:  (1) "the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Omnicron Systems, Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004) (quoting J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)).

action arises." Id. at 495.  As will be discussed further below, the state Supreme Court, relying on

its own precedent in Grunwald, held in Vision Mortgage Corp. v. Patricia J. Chiapperini, Inc., 156

N.J. 580, 585-86 (1999), that the accrual of a cause of action occurs when a plaintiff knows that its

collateral has been "impaired or endangered."  Id. at 586.

    In reviewing case law from Pennsylvania's federal district courts and state appellate court,

it appears there are inconsistencies in how these courts determine when a cause of action accrues.

In Bowman v. Abramson, 545 F. Supp. 227, 231 (E.D. Pa. 1982)[6], a case relied upon by Defendants,

the federal district court, construing Pennsylvania law, held that a legal malpractice claim is not ripe

until there is an adverse judgment.  Id. at 228-29.  The court reasoned that prior to such judgment,

damages are too speculative and thus, there is no legally-cognizable injury.[7]  Id.  Based on Bowman,

there seems to be a conflict of law between New Jersey and Pennsylvania.  However, a subsequent

Pennsylvania state appellate case, Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger,

rejected Bowman's reasoning, and held that Pennsylvania "has never adopted the approach . . . [of]

tolling the statute of limitations in a legal malpractice claim until the appeals of the underlying claim

have been exhausted."  449 Pa. Super. at 376.  Similar to Grunwald, the Robbins court adopted the

discovery rule and held that a statute of limitations begins to run when a party acquires knowledge

---

    [6]The Court notes that the New Jersey Supreme Court in Grunwald expressly rejected the
reasoning set forth in Bowman and came to a different conclusion.

    [7]Defendants also cited to Boerger v. Levin, 812 F. Supp. 564, 565 (E.D. Pa. 1993), as
support for their position that there are no damages until there is an adverse judgment.  The
Boerger court, in its analysis, substantially relied upon Bowman and dicta in Garcia v. Cmty.
Legal Servs. Corp., 362 Pa. Super. 484 (Pa. Super. Ct. 1987) ("the court stated in dicta that were
a jury award to be stayed pending appeal, a suit by the losing party against his attorney for
malpractice may be non-justiciable until the appeal process was complete and the stay lifted").
This approach mentioned in dicta in Garcia was later rejected by Robbins & Seventko
Orthopedic Surgeons, Inc. v. Geisenberger, 449 Pa. Super. 367, 374 (Pa. Super. Ct. 1996).

of the harm.  While the court dealt with the accrual issue in the context of a statute of limitations, the principle it adopted is equally viable to the present case, particularly since <u>Robbins</u> expressly discounted <u>Bowman</u>'s holding to Pennsylvania state claims.  Hence, the state appellate court's holding is in accordance with case law in New Jersey – <u>Grunwald</u> and <u>Vision Mortgage</u> – the fact that damages may be uncertain does not delay accrual.  <u>See</u> <u>e.g.</u>, <u>Pashak v. Barish</u>, 303 Pa. Super. 559, 561 (1982)(in explaining the term "speculative harm," the court stated that "whether damages are remote or speculative has nothing to do with difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages").

The parties in this case have not presented, nor has this Court found, any Pennsylvania Supreme Court case resolving this apparent conflict between the state appellate court and the Pennsylvania federal district courts.  While it would appear that the later state court case would control, and thus, no conflict between New Jersey and Pennsylvania law would ensue, nonetheless, for the sake of completeness, the Court will assume a conflict and consider the second step of the most significant relationship test in the conflicts analysis.

### 2.     Step Two: Restatement Analysis

Generally, choice of law determinations are made on an issue by issue basis, with each issue receiving separate analysis.  <u>See</u> <u>Erny v. Estate of Merola</u>, 171 N.J. 86, 94 (2002) (citing <u>Gantes v. Kason Corp.</u>, 145 N.J. 478, 484 (1996)).  Hence, because Plaintiff asserts a tort claim – legal malpractice – and a breach of contract claim, the Court would normally engage in a separate analysis for each claim.  However, in the context of legal malpractice, a tort claim and a breach of contract claim are not alternative theories of recovery for the same conduct. <u>See</u> <u>Guy v. Liederbach</u>, 501 Pa. 47, 62 (1983); <u>see</u> <u>also</u> <u>Amboy Bancorporation v. Jenkens & Gilchrist</u>, 2008 U.S. Dist. LEXIS

62158, at *14 (D.N.J. 2008)("claims that allege only a breach of the duty of care are legal malpractice claims, regardless of the terms in which they are couched").  In that regard, Plaintiff's contract claim must relate to conduct distinct from its legal malpractice tort claim.  Id.  However, here, Defendant's alleged negligent conduct is the same alleged conduct with respect to Plaintiff's breach of contract claim.  As such, the Court will only analyze the Restatement section relating to legal malpractice.

For the legal malpractice claim, the most significant relationship test requires the application of "the 'general principle' of § 145, as viewed through the 'prism' of § 6."  O'Boyle v. Braverman, No. 08-3865, 2009 WL 2038654 at *3 (3d Cir. Jul. 15, 2009).  When, as here, there is no statutory directive on choice of law, the Court looks at the following factors:

> (a)  the needs of the interstate and international systems,
>
> (b)  the relevant policies of the forum,
>
> (c)  the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,
>
> (d)  the protection of the justified expectations,
>
> (e)  the basic policies underlying the particular field of law,
>
> (f)  certainty, predictability and uniformity of result, and
>
> (g)  ease in the determination and application of the law to be applied

Restatement (Second) of Conflict of Laws § 6 (1971).  The relevant portion of section 145 states:

> (2)  Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a)  the place where the injury occurred,
>
> (b)  the place where the conduct causing the injury occurred,

15

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement § 145.

Defendants' alleged negligent performance of legal services for Plaintiff is the issue in this claim. RRHC had an office in New Jersey, until recently. See p. 2 n. 1 supra. Hollin is licensed to practice law in New Jersey. Id. ¶ 3. The legal services centered on a loan transaction involving a residential development in New Jersey, and obtaining first lien protection for Plaintiff, Defendants' client. Id. ¶ 5. Plaintiff is alleging damages based on actions and decisions which occurred in the Bankruptcy Court in New Jersey, following the bankruptcy of Plaintiff's borrower, and a settlement which resulted in Plaintiff becoming a subordinate lien holder. Id. ¶ 22. In fact, the only substantial Pennsylvania contacts in this case are that RRHC's principal place of business is in Paoli, Pennsylvania and Hollin is also licensed to practice in Pennsylvania and Defendants are domiciled in Pennsylvania.[8] Id. ¶ 2. But, these contacts do not rise to a level which would require Pennsylvania law to govern this issue. For these reasons, it is clear that New Jersey has the most substantial interest in the claims.

---

[8]In its Transfer Brief, Defendants bring up a number of Pennsylvania contacts, suggesting that the work actually done for Plaintiff was completed in Defendants' Pennsylvania office. This does not change the Court's choice of law analysis because Defendants still performed New Jersey legal work dealing with New Jersey real estate and lien law. Additionally, the issue in this case is Defendants' alleged "lack of understanding" of New Jersey law. Dismiss Opp'n at 15; see p. 16 n. 8 infra.

16

Moreover, nothing in the analysis of the principles delineated in Section 6 of the Restatement rebuts the presumption that New Jersey has the most significant interest in Plaintiff's claims.  The Court need not undertake an elaborate analysis of each of the seven factors since the New Jersey Supreme Court simplified the choice of law dispute by condensing the Restatement factors into four broader categories: (1) the competing interests of the relevant states, (2) the national interests of commerce among several states, (3) the interests of the parties in realizing justified expectations and achieving predictable results, and (4) the interests of judicial administration. Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 165 (3d Cir. 1999) (citing Pfizer, Inc. v. Empirs Ins., 154 N.J. 187, 196-99, 712 A.2d 634 (1998)).

To gauge the competing interests of the relevant states, the Court will "consider whether application of a competing state's law under the circumstances of the case 'will advance the  policies that the law was intended to promote.'" General Ceramics v. Firemen's Fund Ins. Cos., 66 F.3d 647, 656 (3d Cir. 1995).  Here, the first and second factors clearly favor the application of New Jersey law as New Jersey has an interest in regulating attorneys who practice within their borders.  See Johnson v. Nextel Communs., Inc., 2007 U.S. Dist. LEXIS 70926, at *13-14 (D.N.J. Sept. 21, 2007).  Next, while the interests of the parties "is of extreme importance in the field of contracts," it "plays little or no part in a choice-of-law question in the field of torts." Pfizer, Inc. v. Employers Ins. of Wausau, 154 N.J. 187, 199 (1998).  The last factor does not alter the Court's analysis because the New Jersey Supreme Court has found that the interests of judicial administration factor "must yield to strong state interests implicated by the remaining factors." Fu v. Fu, 160 N.J. 108, 124 (1999).  Because none of the aforementioned factors suffice to rebut the presumption that New Jersey has the most

17

significant relationship with the parties and the issues related to the claims, the Court will apply New Jersey law.

### C.  Application of New Jersey Law to Defendant's Motion to Dismiss

The sole basis for Defendants' Motion to Dismiss is the fact that Plaintiff has not yet suffered damages and therefore cannot satisfy the damages element of either the legal malpractice or breach of contract claim.  Because the elements of the claims are substantially similar, the legal malpractice and breach of contract claims will be discussed together.

Defendants assert that the Bankruptcy Court's declaration - that Plaintiff's loans are subordinate to the loans of the Contract Purchasers - was not adverse to Plaintiff because there is still the possibility that Plaintiff will be paid in full, and even if Plaintiff is not repaid in full, it is unclear what Plaintiff's loss will be and therefore, damages are too speculative to satisfy the damages element of either the legal malpractice or the breach of contract claims.  It is undisputed that New Jersey requires an injury or damages in order to assert a viable legal malpractice or breach of contract claim.  Vastano v. Algeier, 178 N.J. 230, 236-37 (2003), Frederico, 507 F.3d at 203.  However, the issue in this case is whether Plaintiff has suffered any legal injury.  The Court agrees with Plaintiff that, in having its first lien downgraded to a second lien, it has suffered sufficient injury to survive a motion to dismiss.

The Court finds the New Jersey Supreme Court's decision in Vision Mortgage instructive on this issue.  In Vision Mortgage, Plaintiff mortgage company retained defendants to perform real estate appraisals for mortgage loans.  156 N.J. at 583.  Plaintiff then issued mortgages to two separate mortgagors who subsequently defaulted on the loans.  Id.  Plaintiff filed suit against defendants for negligent appraisal.  The issue before the state Supreme Court was when the cause

of action for professional malpractice accrued.  In its holding, the Court rejected the argument that the cause of action in a mortgage foreclosure case accrues at the time of default or the sale of the mortgaged premises.  Id. at 587.  Rather,  "[t]he better analysis leads us to conclude that the accrual of a cause of action should not await the sale of the mortgaged properties, but rather that the cause of action should accrue when the mortgagee knows or has reason to know that its collateral has been impaired or endangered by the negligent appraisal. At that time, the mortgagee knows that it has suffered legal injury." Id. at 587-86.  "That damages may be uncertain does not delay accrual." Id. at 586.

Relying on Vision Mortgage, the New Jersey appellate court in Commonwealth Land Title Ins. Co. V. Kurnos, 340 N.J. Super. 25 (App. Div. 2001), addressed an issue similar to that presented in the case at bar.  In Kurnos, defendant attorney was retained to represent homeowners in the refinancing of their home mortgage.  Id. at 27.  The principal amount of the loan was $450,000 and was to be secured by a first mortgage on the residence.  Plaintiff bank was the lender and plaintiff title company was to provide title insurance guaranteeing that the bank's mortgage was a first lien on the property.  Id. The refinance was to discharge both the first lien of the then-mortgagee, Morris County Savings Bank, and a second lien held by Midlantic National Bank.  The second lien secured a $150,000 home equity line of credit.  Id.  After the attorney remitted a pay-off check to Midlantic, due to his error, neither the homeowners nor the attorney instructed Midlantic to close the home equity account and thus, the mortgage securing the home equity loan remained on the record.  Id. After the original first mortgage was cancelled, the Midlantic mortgage moved into first position ahead of plaintiff bank's mortgage. Thereafter, the homeowners defaulted on the mortgage and the home equity loan, which prompted plaintiffs to sue the attorney for malpractice.  However, plaintiff

title company became aware of the attorney's negligence seven years prior to the defaulting of the loan by the borrower.  The trial court ruled that the statute of limitations expired six years after the title company became aware that the attorney's negligence had occurred, not six years after the borrower defaulted.  Affirming the trial court's decision, the appellate court ruled that  "the accrual [of the attorney malpractice claim] cannot simply abide a default when a mortgagee knows full well that its bargained-for position had been altered to the extent that upon reasonable inquiry, it can readily determine that its security has been impaired."  Id. at 31-32.

Here, the facts are substantially similar to Kurnos.  Plaintiff hired Defendants to procure "a first lien on the lots, free and clear of all other encumbrances."  Compl. ¶ 9.  Once Elliot Residential entered into an agreement with the Contract Purchasers and the Bankruptcy Court judge approved the settlement, Plaintiff's lien became subordinate to the Contract Purchasers' liens.  Id. ¶ 22.  Just as in Kurnos, Plaintiff's security in Sea Pine Estates was impaired once the first lien interest became a second lien interest.  Nevertheless, Defendants argue that Plaintiff will only suffer damages "if repayment by Elliott Residential of its debt to [Plaintiff] will be deficient or [Plaintiff] will receive less than if there were no 'carve out' for the [Contract Purchasers'] liens."  However, "[t]o the extent that a mortgage has value and marketability beyond the value of its collateral, such value is clearly affected by its status as a second lien as opposed to a first lien.  Even if the collateral [is] more than sufficient to satisfy the combined . . . mortgage debt, a second mortgage would be required to advance [the amount of the first mortgage] to protect its second position.  That exposure and potential detriment . . . [is] sufficient to trigger the cause of action."  Kurnos, 340 N.J. Super. at 31.

Having determined that Plaintiff's allegations are sufficient to aver legal injury, Defendants maintain that Plaintiff still fails to sufficiently allege the damages element because RBC fails to

allege that it will not be fully repaid or that it is under-collateralized and cannot otherwise recover the debt.  The Court disagrees.  <u>Twombly</u> does not require Plaintiff to allege specific numbers in connection with its lien, nor does it require Plaintiff to specifically allege that RBC will suffer damages by not being able to recover fully from the sale of the Sea Pine Estates in Bankruptcy Court.  Rather, the allegations as pled in the Complaint contain "enough factual matter (taken as true) to suggest the required [damages] element."  <u>Phillips</u>, 515 F.3d at 234 (quotations and citations omitted).  Indeed, "[t]his does not impose a probability requirement at the pleading stage."  <u>Id.</u>  As such, contrary to Defendants' arguments, at this conjuncture, Plaintiff need not plead or prove "actual" loss in order to survive a motion to dismiss; instead, it is sufficient that Plaintiff has put Defendants on notice that their alleged legal malpractice has impaired Plaintiff's position and ability to collect its lien in full.  Reading the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff has sufficiently pled the damages element for both the legal malpractice and breach of contract claims.  Therefore, Defendants' motion to dismiss for failure to state a claim is denied.

### D.     Justiciability Under Article III

With respect to standing, Defendants submit that Plaintiff has not presented a justiciable case or controversy because Plaintiff has not suffered injury by virtue of its lien becoming subordinate to liens of the Contract Purchasers.  Thus, Defendants posit that Plaintiff's claim is not ripe for adjudication.  Ripeness derives from Article III's requirement that federal courts may decide only cases and controversies.[9]  <u>See</u> <u>Nextel Commc'ns of the Mid-Atlantic, Inc. v. City of Margate</u>, 305

---

[9]"The judicial power shall extend to all cases, in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority;--to all cases affecting ambassadors, other public ministers and consuls;--to all cases of admiralty and maritime jurisdiction;--to controversies to which the United States shall be a party;--to controversies between two or more states;--between a state and citizens of another

F.3d 118, 192 (3d Cir. 2002). "The ripeness doctrine prevents judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Lauderbaugh v. Hopewell Twp., 319 F.3d 568, 575 (3d Cir. 2003). The Supreme Court has stated that to meet the ripeness standard, plaintiffs must show either a specific present objective harm or the threat of specific future harm. Laird v. Tatum, 408 U.S. 1, 14 (1972); see also Interfaith Comty. Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 257 (3d Cir. 2005) (citing Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 160 (4th Cir. 2000) ("The Supreme Court has consistently recognized that threatened rather than actual injury can satisfy Article III standing requirements")). Having already determined that Plaintiff has sufficiently pled damages to satisfy claims for both legal malpractice and breach of contract, Defendants' argument fails. Rather, by claiming that it has been and will continue to be injured by Defendants' negligence and breach of contract which resulted in the Bankruptcy Court's declaration of the subordinate position of Plaintiff's lien, Plaintiff has sufficiently pled injury to satisfy Article III's justiciability requirements. Therefore, Plaintiff has standing at this time.

## IV.    Conclusion

For the foregoing reasons, the Court denies both Defendants' Motions. Specifically, Defendants' Motion to Transfer is denied, and Defendants' Motion to Dismiss is denied.


Dated:  August 19, 2009                         /s/ Freda L. Wolfson
                                                Honorable Freda L. Wolfson
                                                United States District Judge

---

state;--between citizens of different states;--between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects." U.S. Const. art. III, § 2.